**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDDIE HARGROW, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1208-CR-697 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman Jr., Judge
Cause No. 48C03-1202-MR-264

**April 19, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Eddie Hargrow ("Hargrow") pleaded guilty to murder. He was sentenced to the maximum sentence of sixty-five years executed in the Indiana Department of Correction. Hargrow argues that the trial court abused its discretion in sentencing and imposed an inappropriate sentence in light of the nature of the offense and his character.

We affirm.

**Facts and Procedural History**

On February 4, 2012, Hargrow went to Beverly Burnett's ("Burnett") apartment in Anderson, Indiana. He used cocaine with her and then paid her $100 to perform oral sex on him. Afterward, because Hargrow thought Burnett was trying to take more money from his wallet, he grabbed a kitchen knife and stabbed her. The knife blade broke off in Burnett's back, but he continued to stab her with the broken knife. Burnett's neighbor, Cheryl Hester ("Hester") heard a loud commotion and heard Burnett scream "get him off of me," "He's gonna kill me[,]" and "Help me[.]" Tr. p. 11. When Hester approached the apartment, the door was locked so she went to a neighbor's door to seek help. However, Burnett's door then opened, and Hester saw an "older black male[,]" whom she later identified as Hargrow, run past her with "a severe limp[.]" Tr. p. 12. Hester observed Burnett bleeding heavily on the floor, and, shortly thereafter, police and medics arrived on the scene. Burnett was pronounced dead upon her arrival at the hospital.

After leaving Burnett's apartment, Hargrow fled to his neighbor's house, Amy Calhoun ("Calhoun"), with blood on his clothes. Calhoun gave him a change of clothes and disposed of his clothes in the White River. When Hargrow's wife, Carol Hargrow ("Mrs. Hargrow") arrived home, she found Hargrow hiding beside the bed. He indicated

2

that he had possibly killed someone and that he wanted to turn himself in to the police the following day. Mrs. Hargrow convinced him to turn himself him that day. At the police department, Hester identified Hargrow as the person that had fled Burnett's apartment.

On February 9, 2012, the State charged Hargrow with murder and filed a notice of intent to file a habitual offender sentence enhancement against Hargrow. Five months later, on July 19, 2012, Hargrow pleaded guilty without the benefit of a plea bargain, and the State agreed not to file the habitual offender enhancement. Tr. p. 16.

The trial court found as aggravating circumstances Hargrow's "extensive criminal history[,]" the fact that many of his past criminal offenses "used the weapon of a knife, which was the weapon that was used in this case[,]" and the fact that Hargrow had inflicted several wounds upon the victim and the knife was embedded in the victim's body. Tr. pp. 64-65. The trial court considered Hargrow's guilty plea a mitigating circumstance but found it was "de minimus" since the State agreed to drop the habitual offender enhancement and had already largely prepared for trial. Tr. p. 65. The trial court did not find Hargrow's medical condition a mitigating circumstance because the trial court found "if he did have these medical conditions . . . abusing his body by the use of these drugs was by his own choice and . . . probably contributed to the deterioration of his physical condition." Id. The trial court then concluded that the aggravating circumstances outweighed the mitigating circumstances and sentenced Hargrow to the maximum term of sixty-five years in the Indiana Department of Correction. Hargrow now appeals.

## I. Abuse of Discretion

Hargrow argues that the trial court abused its discretion in its sentencing decision by failing to consider mitigating circumstances. We review sentencing decisions "only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" Id. (quoting K.S. v. State, 849 N.E.2d 538, 544 (Ind. 2006)). A trial court may abuse its discretion "by (1) issuing an inadequate sentencing statement, (2) finding aggravating or mitigating factors that are not supported by the record, (3) omitting factors that are clearly supported by the record and advanced for consideration, or (4) by finding factors that are improper as a matter of law." Phelps v. State, 969 N.E.2d 1009, 1019 (Ind. Ct. App. 2012), trans. denied. If a defendant alleges that trial court failed to identify or find a mitigating factor, the defendant must establish that "the mitigating evidence is both significant and clearly supported by the record." Anglemyer, 868 N.E.2d at 493.

Hargrow argues that the trial court abused its discretion by failing to adequately consider his guilty plea and his acceptance of responsibility as a mitigating factor. "[A] defendant who pleads guilty deserves 'some' mitigating weight be given to the plea in return." Anglemyer v. State, 875 N.E.2d 218, 220 (Ind. 2007) (quoting McElroy v. State, 865 N.E.2d 584, 591 (Ind. 2007)). However, a trial court is not obligated "to 'weigh' aggravating and mitigating factors against each other when imposing a sentence[;]"

therefore, "a trial court can not now be said to have abused its discretion in failing to 'properly weigh' such factors." Anglemyer, 868 N.E.2d at 491.

Here, the trial court did find Hargrow's guilty plea a mitigating circumstance but found it was "de minimu[s,]" since the State agreed to drop the habitual offender enhancement[1] and had already largely prepared for trial. Tr. p. 65. Thus, the trial court did afford the mitigating circumstance some weight, albeit minimal weight, and Hargrow's argument is asking us to review the weight given to this factor, which we will not do on appeal. See Anglemyer v. State, 868 N.E.2d at 491; see also Deloney v. State, 938 N.E.2d 724, 732 (Ind. Ct. App. 2010) ("While we review the aggravating and mitigating factors considered by the trial court for abuse of discretion, we do not review the relative weight or value assigned to each factor.")

Hargrow also argues that the trial court failed to consider his medical condition as a mitigator.[2] The trial court found that Hargrow's medical condition was not a mitigating factor because "[t]he defendant, if he did have these medical conditions, with his kidneys, his prostate, and his heart" used drugs which "probably contributed to the deterioration of his physical condition." Tr. p. 65. Thus, the trial court considered his medical condition but found it was not a mitigator. While the trial court may "not ignore facts in the record

[1] Hargrow argues on appeal that the trial court erred by concluding he derived a benefit from the State agreeing not to file the habitual offender enhancement because the trial court's omnibus date was April 9, 2012 and under Indiana Code section 35-34-1-5(e), "An amendment of an indictment or information to include a habitual offender charge . . . must be made not later than ten (10) days after the omnibus date."

[2] Hargrow argues the trial court's sentence was inappropriate because it failed to consider his medical condition as a mitigator. However, the case he cites in support of this argument, Moyer v. State, 796 N.E.2d 309 (Ind. Ct. App. 2003), addresses whether the trial court abused it discretion in failing to address a mitigating circumstance. Thus, we rephrase Hargrow's argument as whether the trial court abused its discretion in failing to consider his medical condition as a mitigating circumstance.

that would mitigate an offense," the trial court is not required "to accept the defendant's arguments as to what constitutes a mitigating factor." Storey v. State, 875 N.E.2d 243, 252 (Ind. Ct. App. 2007) (citing Gross v. State, 769 N.E.2d 1136, 1140 (Ind. 2002)).

Moreover, "[a]n allegation that the trial court failed to identify or find a mitigating factor requires the defendant to show that the mitigating evidence is both significant and clearly supported by the record." Storey, 875 N.E.2d at 252 (citing Carter v. State, 711 N.E.2d 835, 838 (Ind. 1999)). Hargrow argues that his medical condition is a significant mitigating circumstance that the trial court failed to consider, and he relies on Moyer v. State, 796 N.E.2d 309 (Ind. Ct. App. 2003), for the proposition that "where the record demonstrates that the defendant is seriously ill and requires constant medical attention, the trial court should consider the defendant's illness as a significant mitigating circumstance." Appellant's Br. at 9. However, in Moyer, our supreme court held that the defendant's illness was a significant mitigating circumstance because he "testified at length about the medical hardships that he would endure if incarcerated." 796 N.E.2d at 314 (emphasis added). The record in Moyer reflected that the defendant's illness required "constant medical attention" and "frequent tracheal cleanings and sterile catheters, which the jail [could not] provide regularly." Id. Thus, Moyer is distinguishable from the case at hand, because at the sentencing hearing, Hargrow presented evidence regarding his medical conditions but failed to present any evidence at regarding how incarceration would cause him a medical hardship.[3]

---

[3] Hargrow argues on appeal that the Department of Correction "is ill equipped to address serious day to day and long term medical needs and conditions such as are present here." Appellant's Br. at 9.

The trial court was in the best position to assess Hargrow's medical condition, and we cannot say the trial court abused its discretion in not finding his medical condition as a mitigating circumstance. Moreover, Hargrow failed on appeal to show that the mitigating evidence is significant and clearly supported by the record. Therefore, we conclude the trial court did not abuse its discretion by failing to consider his medical condition as a mitigating circumstance.

## II. Inappropriate Sentence

Hargrow also contends that the sentence of sixty-five years executed in the Indiana Department of Correction imposed by the trial court is inappropriate in light of the nature of his offense and of his character. Under Indiana Appellate Rule 7(B), we may "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we may review and revise a sentence, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We must give "deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." Trainor v. State, 950 N.E.2d 352, 355-56 (Ind.

However, this issue was not raised at the sentencing hearing, and there was no evidence in the record that the Department of Correction could not address Hargrow's medical condition.

7

Ct. App. 2011), trans. denied (quoting Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007)) (internal quotation marks omitted).

When we review the appropriateness of a sentence, we consider "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." Cardwell, 895 N.E.2d at 1224. The defendant has the "burden to persuade us that the sentence imposed by the trial court is inappropriate." Shell v. State, 927 N.E.2d 413, 422 (Ind. Ct. App. 2010). In addition, in Buchanan v. State, our supreme court clarified the rule regarding the imposition of maximum sentences as follows:

> We have also observed that the maximum possible sentences are generally most appropriate for the worst offenders. This is not, however, a guideline to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

767 N.E.2d 967, 973 (Ind. 2002) (internal quotation marks and citations omitted).

Hargrow argues that the maximum sentence was inappropriate in light of the nature of the offense and his character. As to the nature of the offense, we note that the nature of the offense was particularly heinous in this case. Hargrow stabbed Burnett in the back with a kitchen knife, because he thought she was trying to take money from him. The blade of the knife broke off and became embedded in Burnett's body, but Hargrow continued to stab Burnett with the broken knife. Tr. p. 14.

As to Hargrow's character, the fact that Hargrow pleaded guilty does, to some extent, reflect well on his character, as does the testimony of his family and friends. However, his extensive and violent criminal history is far from helpful to him in this regard. Hargrow's criminal history dates back over forty years. "[T]he significance of a criminal history varies based on the gravity, nature and number of prior offenses as they relate to the current offense." Gleason v. State, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012) (citing Wooley v. State, 716 N.E.2d 919, 929 (Ind.1999)). Among other criminal offenses, Hargrow was convicted of trespass, assault and battery in 1972; Class B felony involuntary manslaughter in 1990 after he stabbed a man approximately ten times; Class A misdemeanor resisting law enforcement and Class C felony battery in 1995 after he stabbed a female with a knife and caused lacerations to her head, body, leg, and hand; Class D felony residential entry and Class A misdemeanor domestic battery in 2003 during which he grabbed a knife and held it above his wife's head while he threatened her; and Class B misdemeanor false informing in 2005.

This lengthy and serious criminal history depicts a consistent inability to lead a law-abiding life, and it reflects very poorly on Hargrow's character, as it clearly displays his violent tendency to inflict harm upon others. Furthermore, we find particularly troubling that many of these crimes were closely related to the offense at hand in that several of the prior offenses also involved using a knife as a weapon. This evidence of Hargrow's actions put him in the class of worst possible offenses and offenders.

While reasonable minds may differ as to whether the maximum sentence was appropriate under the circumstances, we give considerable deference to the trial court's

judgment because we "recognize the unique perspective a trial court brings to its sentencing decisions." Gleason, 965 N.E.2d at 712 (citing Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App.2007)). Here, prior to imposing the maximum sentence, the trial court noted that Hargrow's "prior criminal history crimes have used the weapon of a knife, which was the weapon that was used in this case" and that "[t]here were several wounds upon [Burnett's] body by the knife and in fact the one picture relates the picture of the knife broken off in the lady's body." Tr. pp. 63-64. In light of the heinous nature of the offense in this case and Hargrow's serious and lengthy criminal history, we defer to the trial court's judgment and conclude the sentence imposed by the trial court was not inappropriate.

## Conclusion

We conclude the trial court did not abuse its discretion in sentencing Hargrow and that the sentence was not inappropriate in light of the nature of his offense and character.

Affirmed.

BAKER, J., and MAY, J., concur.