**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BUCK GLEASON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  48A02-1106-CR-630 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON SUPERIOR COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48D03-0905-FC-143

**March 29, 2012**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

In this case, while we recognize that brass knuckles may be considered a deadly weapon under our statutes, we revise the defendant's aggregate sentence from eleven years to six years following his several convictions for battery, criminal recklessness, and the failure to stop after an accident that resulted in injury.

Appellant-defendant Buck Gleason appeals his convictions for Battery with a Deadly Weapon,[1] a class C felony, Battery Resulting in Bodily Injury,[2] a class A misdemeanor, Criminal Recklessness while Armed with a Deadly Weapon,[3] a class D felony, and Failure to Stop After an Accident Resulting in Injury,[4] a class A misdemeanor, challenging the sufficiency of the evidence. Gleason maintains that the State failed to prove that he possessed or used a deadly weapon, and that he failed to stop after hitting a victim with his vehicle.

Gleason also challenges the propriety of the aggregate eleven-year sentence that was imposed, claiming that the trial court abused its discretion because the sentencing statement did not adequately identify any aggravating circumstances, that the trial court improperly identified the nature of the offense as an aggravating factor, that consecutive sentences should not have been imposed in light of the improper aggravator, and that the sentence was inappropriate in light of the nature of the offenses and his character.

---

[1] Ind. Code § 35-42-2-1(a)(3).

[2] I.C. § 35-42-2-1(a)(1)(A).

[3] I.C. § 35-42-2-2(c)(2).

[4] Ind. Code § 9-26-1-1; I.C. § 9-26-1-8(a).

Although we conclude that the evidence was sufficient to support Gleason's convictions, we remand this cause to the trial court with instructions that it revise Gleason's sentence to an aggregate term of six years.

FACTS

On April 8, 2009, Amber-Ball Kilgore was in her home with her fiancé, Mark Goodman, and four children. While the children were upstairs watching television, Amber heard a knock on the door. When she opened the door, Gleason, whom she had never met, was standing there. Goodman then walked up to the door and Gleason informed him that he was there to pick up some money that was owed to him by Goodman's former boss, Matt Wallace. Wallace apparently owed Gleason some money for some repair work on a roof. However, Goodman had not seen Wallace for nearly two weeks. Gleason then announced that he was there "for money or blood" and showed Goodman something that "looked like brass knuckles." Tr. p. 62, 63. Gleason then put the item on his hand the way that "a person would wear brass knuckles." Id. Goodman and Amber both remembered that the weapon was metal and "looked like a knife." Id. at 14, 54.

After Gleason put the weapon on his hand, Goodman turned around. Gleason then struck Goodman in the back of the head with the hand that was holding the metal weapon. Goodman fell to the floor, and Amber picked up a frying pan and began swinging it at Gleason. In response, Gleason hit Amber in the left arm with the weapon.

3

Gleason's attack on Amber left her with bruising and pain in her arm, and Goodman had laceration and bleeding from his head that required four stitches.

Goodman got up, grabbed a hammer, and Gleason began to walk outside. However, when Gleason subsequently turned around as if he was going to reenter the residence, Goodman threw the hammer at him but missed. Gleason was walking toward his vehicle and Goodman's parents, who lived across the street, began to approach Amber's house. Goodman's father, Donald, walked up to the scene and heard Gleason yelling at his son. In response, Donald raised a cane above his head and told Gleason to leave. Gleason got into his vehicle and drove it toward Donald. Gleason's passenger side view mirror and door of his vehicle struck Donald, knocking him to the ground. Immediately following this incident, Goodman threw four gallons of spoiled chili onto Gleason's vehicle because he thought it "would be easier for the police to find him with the chili all over it." Tr. p. 66-67.

Gleason was arrested and the State charged him with:

Count I—Battery by means of a deadly weapon, a class C felony, for injuring Goodman "by means of a deadly weapon, to wit: knife encased in brass knuckles."

Count II—Battery resulting in bodily injury, a class A misdemeanor, regarding the injuries that Amber sustained.

Count III—Battery by means of a deadly weapon, a class C felony, for the injuries that Donald Goodman sustained when Gleason struck him with his vehicle.

Count IV—Failure to stop after an accident resulting in injury, a class A misdemeanor, regarding the incident with Donald Goodman.

4

Appellant's App. p. 9-10.

Following a bench trial on April 29, 2011, Gleason was convicted of Counts I, II, and IV, and guilty of the lesser-included offense of criminal recklessness while armed with a deadly weapon, a class D felony, under Count III.

On June 1, 2011, the trial court sentenced Gleason to eight years on Count I, one year on Count II, to run concurrently with the sentence on Count I, three years on Count III, to run consecutively to the sentence for Count I, and six months on Count IV, to run concurrently with the sentence for Count I. As a result, Gleason was sentenced to an aggregate term of eleven years. Gleason now appeals.

## I. Sufficiency of the Evidence

### A. Standard of Review

Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this Court does not reweigh the evidence or judge the credibility of the witnesses. Bond v. State, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010), trans. denied. We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. Id. Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. Id.

### B. Battery With a Deadly Weapon

Gleason claims that the State failed to prove that he used a deadly weapon when he committed battery on Goodman. Specifically, Gleason argues that there is no evidence establishing that Gleason displayed any brass knuckles or used a knife in the attack.

To convict Gleason of the charged offense, the State must prove that Gleason (1) knowingly or intentionally; (2) touched Goodman in a rude, insolent, or angry manner; (3) by means of a deadly weapon. See I.C. § 35-42-2-1(a)(3).

Our General Assembly has defined a "deadly weapon" as a weapon "that in the manner it is used; or could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury." Ind. Code § 35-41-1-8(2). Serious bodily injury is defined as an injury causing serious permanent disfigurement, unconsciousness, or extreme pain. Ind. Code § 35-41-1-25.

The question of whether a weapon is "deadly" is determined from a description of the weapon, the manner of its use, and the circumstances of the case. Merriweather v. State, 778 N.E.2d 449, 457 (Ind. Ct. App. 2002). Whether an object is a deadly weapon based on these factors is a question of fact. Miller v. State, 500 N.E.2d 193, 197 (Ind. 1986). The original purpose of the object is not considered. Rather, the manner in which the defendant actually used the object is examined. Timm v. State, 644 N.E.2d 1235, 1238 (Ind. 1994). Also, it does not matter if actual injuries were sustained by the crime victim, provided the defendant had the apparent ability to injure the victim seriously through his use of the object during the crime. Miller, 500 N.E.2d at 196-97.

6

In this case, both Amber and Goodman described the item that was used to batter them. More specifically, Amber testified that Gleason's weapon "looked like a knife—like a brass knuckle thing." Tr. p. 14. Goodman testified that the object Gleason used "looked like some brass knuckles. It has a little, funky, little curl around this edge and around that edge." Id. at 63. Mark also testified that Gleason placed the object on his hand the same way a person would wear brass knuckles. Id. Both Mark and Amber testified that the object was made of metal. Id. at 14, 56, 63. Although Gleason claims that it is only speculation as to whether Goodman and Amber actually saw brass knuckles, such a contention amounts to an invitation for us to reweigh the evidence, which we will not do. That said, the trial court, as the finder of fact, could reasonably conclude from the circumstances, that Gleason used brass knuckles when battering Amber and Goodman.

Finally, we note that the manner in which Gleason used the object and the circumstances of this case also show that the object was a deadly weapon. As discussed above, Gleason put the weapon on his hand after telling Goodman that "he was there for money or blood." Tr. p. 62. Gleason then hit Goodman in the back of the head with the weapon, resulting in significant lacerations causing Goodman to fall to the floor. Id. at 15-16, 64. Defendant also used the weapon to strike Amber in the arm, causing pain and bruising. Id. at 18, 30. Gleason inflicted serious injury on both Goodman and Amber with the weapon. And the use of the weapon demonstrates that the object was a deadly weapon within the meaning of the statute. In short, we conclude that the evidence was

7

sufficient to support Gleason's conviction for battery with a deadly weapon, a class C felony.

### C. Criminal Recklessness

Gleason next argues that the criminal recklessness conviction must be set aside because the State failed to show that he acted recklessly. More specifically, Gleason claims that there was no evidence demonstrating that he was driving the vehicle in a reckless manner when he struck Donald with it.

To convict a person of criminal recklessness as a Class D felony, the State must show that the defendant (1) recklessly, knowingly, or intentionally (2) performed an act that created a substantial risk of bodily injury to another person (3) while armed with a deadly weapon. I.C. § 35-42-2-2(c)(2)(A). A companion statute, Indiana Code section 35-41-2-2(c), provides that "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

In this case, the record demonstrates that Donald stood by Gleason's SUV and argued with him. Tr. p. 94. Gleason then entered his SUV, shut the door, backed up slightly, and accelerated at a "frantic" pace. Id. at 27, 94. Gleason's rapid acceleration resulted in his vehicle striking Donald with the side view mirror and passenger door. Id. at 95. The impact knocked Donald to the ground, where he remained until he was taken to the hospital. Id. at 28, 94. Moreover, while Gleason was driving away, he nearly struck a neighbor who was walking his dog and almost collided with other traffic.

8

Because of the high rate of acceleration, Gleason left skid marks on Goodman's driveway and on the street in front of their home. Id. at 27, 68, 112.

In light of this evidence, it is apparent that Gleason drove without any regard to the potential harm that could result to Donald Goodman. Moreover, Gleason's acceleration to the point of leaving tire marks on the driveway and the street amounts to a substantial deviation from the acceptable standard of driving a vehicle. As a result, the State proved that Gleason acted recklessly, and we decline to set the conviction aside.

### D. Failure to Stop After an Accident Resulting in Injury

Gleason next claims that the evidence was insufficient to show that he failed to stop after the accident that resulted in injury. More particularly, Gleason maintains that the State failed to show that he failed to stop his SUV knowing he had struck Donald.

Indiana Code section 9-26-1-1 requires drivers who are involved in an accident resulting in the injury, death, or entrapment of a person must immediately stop their vehicle at the scene and remain there until he or she provides identifying information. Although the defendant must have knowledge of the injury or accident, the State is not required to prove actual knowledge. Micinski v. State, 487 N.E.2d 150, 152-53 (Ind. 1986). The fact finder may infer that a defendant knew that an accident occurred or that people were injured from an examination of the circumstances of the event. Id. at 153. The duties that the statute imposes upon a driver are triggered regardless of whether the

driver's vehicle struck anyone or anything. Armstrong v. State, 848 N.E.2d 1088, 1092 (Ind. 2006).

In this case, while the State did not elicit testimony from Gleason that he knew he struck Donald with the SUV, sufficient facts were presented from which the trial court could find that Gleason knew that he had struck him. As stated above, Gleason recklessly accelerated his SUV while Donald stood nearby. Tr. p. 94-95. Gleason struck Donald with the side view mirror, causing the mirror to break. The force of the impact knocked Donald to the ground, and he remained there as Gleason sped away. Id. at 28, 94-95. Donald remained on the ground while Gleason sped away from the home. From this evidence, the trial court could reasonably infer that Gleason knew about the incident. The record shows that Gleason fled from the scene and is guilty of failing to stop following an accident resulting in an injury. Thus, we decline to set aside the conviction.

## II. Sentencing

### A. Sentencing Statement and Aggravating Factors

Gleason argues that the trial court erred in sentencing him to a total of eleven years. More particularly, Gleason maintains that the trial court abused its discretion because it did not articulate any aggravating circumstances when imposing the sentence, but subsequently improperly identified the nature of the offense as an aggravating factor. As a result, Gleason claims that consecutive sentences should not have been ordered. Gleason also contends that his sentence is inappropriate in light of the nature of the offenses and his character.

We initially observe that sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. The trial court can abuse its discretion by (1) issuing an inadequate sentencing statement, (2) finding aggravating or mitigating factors that are not supported by the record, (3) omitting factors that are clearly supported by the record and advanced for consideration, (4) or by finding factors that are improper as a matter of law. Laster v. State, 956 N.E.2d 187, 193 (Ind. Ct. App. 2011).

Our trial courts are required to enter sentencing statements whenever imposing a sentence for a felony offense. Anglemyer, 868 N.E.2d at 490. The statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. Id. If the trial court includes aggravating or mitigating circumstances in its sentencing statement, it must identify all of the significant circumstances and "explain why each circumstance has been determined to be aggravating or mitigating." Id. When reviewing the sufficiency of the sentencing statement, we examine both the trial court's written and oral statements. McElroy v. State, 865 N.E.2d 584, 589 (Ind. 2007).

In this case, while the trial court did not list the aggravating and mitigating factors in its written sentencing statement, it set forth the following factors during the sentencing hearing:

> So it's crime that was committed by [Defendant] and the mitigating circumstances where it didn't—allegedly didn't cause serious harm. I was trying to write these down as [defense counsel] was articulating them. It did cause serious harm. I mean, when people's homes are invaded and [they are] beat up, that's serious. Not only is it physical but it's emotional. . . . And also the thing about prison would result—would be an undue hardship to the—[Defendant] and his family, especially his family and there was really no evidence of that other than argument. So that's not a very strong mitigating circumstance. The prior—the aggravating circumstances are the defendant's prior criminal history, which shows serious disdain in the law. . . . The nature of the offense. Basically a home invasion taking into his hands matters that should have been reduced. . . . So the aggravating circumstances outweigh the mitigating circumstances.

Tr. p. 243-44.

As set forth above, the trial court set forth the aggravating and mitigating factors in its oral sentencing statement and discussed the facts that supported each factor. In our view, the trial court's statement was sufficiently detailed to support the imposition of the sentence. See Webb v. State, 941 N.E.2d 1082, 1088 (Ind. Ct. App. 2011) (finding the sentencing statement sufficient when it was determined that at the conclusion of the sentencing hearing, the trial court discussed the evidence concerning Webb's mental health and rejected it as a mitigating factor. The court then identified four aggravating factors and mentioned the evidence that supported each one), trans. denied.

Gleason also contends that the trial court abused its discretion in sentencing him because it improperly identified the nature of the offense as an aggravating factor. While

12

we acknowledge that a material element of a crime cannot be an aggravating circumstance, the nature and circumstances of the crime can be an aggravator. Caraway v. State, 959 N.E.2d 847, 850 (Ind. Ct. App. 2011). If the nature of the offense is identified as an aggravating factor, the trial court must discuss facts that go beyond the statutory requirements of the crime. McElroy, 865 N.E.2d at 589-90.

The trial court described Gleason's actions as being "[b]asically a home invasion." Tr. p. 243-44. In fact, the trial court discussed how Gleason violated the sanctity of the Goodman's home. Id. The statutory requirements for Gleason's four offenses do not require any entrance into the victim's home or dwelling. In short, the trial court provided facts demonstrating how Gleason's actions exceeded the statutory requirements for conviction.

In our view, this is not a case where the trial court insufficiently explained how Gleason's actions were worse than the requisite elements of the offense. To illustrate, in Smith v. State, 872 N.E.2d 169 (Ind. Ct. App. 2007), the trial court found that "the offense itself, it's a very aggravating offense what the defendant did in this case whether he was the shooter or not." Id. at 178. Unlike the circumstances in Smith, the trial court's finding that a home invasion occurred went beyond the statutory requirements for the offense.

And even assuming solely for the sake of argument that the trial court erred in identifying the nature of the offense as an aggravating factor, we note that Gleason has not challenged the remaining aggravating factors, including his lengthy criminal history.

13

Indeed, a single aggravating circumstance may support the imposition of consecutive sentences. See Bennett v. State, 787 N.E.2d 938, 947 (Ind. Ct. App. 2003) (observing that even if the trial court erred in considering either of the two challenged aggravating circumstances, the trial court could still enhance the defendant's sentence through the single aggravating circumstance of his criminal history).

To order a consecutive sentence, "the trial court must find at least one aggravating circumstance." Hoeppner v. State, 918 N.E.2d 695, 699 (Ind. Ct. App. 2009). One valid aggravator alone is enough to enhance a sentence or to impose it consecutive to another. Moreover, the same factor may be used both to enhance a presumptive sentence and to justify consecutive sentences. Dixon v. State, 825 N.E.2d 1269, 1272 (Ind. Ct. App. 2005).

Here, the trial court found that two aggravating circumstances existed. As noted above, Gleason does not challenge his criminal history as an aggravating factor. Tr. p. 243. The severity of this aggravator alone is sufficient to justify the imposition of consecutive sentences. Thus, Gleason's claim fails with respect to this issue.

### D. Inappropriate Sentence

Gleason next claims that the aggregate eleven-year sentence is inappropriate. Specifically, Gleason argues that the nature of the offenses and his character warrant a reduced sentence.

We may revise a sentence authorized by statute if the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule

7(B). We exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give due consideration to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions. Stewart v. State, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007).

In determining the appropriateness of a sentence, we examine the nature of the offense and the character of the offender. Childress v. State, 848 N.E.2d 1073,1080 (Ind. 2006). Our review of the sentence should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count. Pierce v. State, 949 N.E.2d 349, 352 (Ind. 2011). The defendant bears the burden of proving that the sentence is inappropriate. Childress, 848 N.E.2d at 1080.

As for the nature of the offense, Gleason injured three members of the Goodman family, two of whom required medical attention. Tr. p. 28, 76. The three victims had never met Gleason, and he attacked Amber and Goodman without provocation while four children were at the residence. Id. at 12-13. In fact, Goodman was turning away from Gleason in an attempt to disengage from the altercation when Gleason struck Goodman in the back of the head. Id. at 15-16. Gleason also used brass knuckles in the attack and then drove his SUV into Donald.

As for Gleason's character, the record demonstrates that he has repeatedly violated our laws since 1989. However, we note that Gleason's criminal activity is not particularly egregious. And the significance of a criminal history varies based on the

15

gravity, nature and number of prior offenses as they relate to the current offense. Wooley v. State, 716 N.E.2d 919, 929 (Ind. 1999).

Gleason has no prior felony convictions and four misdemeanor convictions. Tr. p. 54, 56. Most of the other charges were infractions, dismissed, or withheld. Appellant's App. p. 52-58. Gleason never served any time in prison for any offense.

Although we agree that the aggravating weight of Gleason's criminal history justifies the imposition of consecutive sentences, we do not find it sufficiently aggravating to justify enhancing the class C felony to the maximum term of eight years. In short, we believe that the total executed term is excessive and should be revised pursuant to Indiana Appellate Rule 7(B). Thus, we revise Gleason's sentence on Count I, battery by means of a deadly weapon, a class C felony, to the advisory term of four years, pursuant to Indiana Code section 35-50-2-6, and the offense under Count III to a term of one and one-half years that shall be ordered to run consecutively with the sentence imposed in Count I. Additionally, the six month sentence imposed under Count IV shall be ordered to run consecutively to the sentences imposed under Counts I and III. Finally, we order the one-year sentence that the trial court imposed in Count II to run concurrently to the sentence imposed in Count I. Thus, Gleason's sentence is revised to an aggregate term of six years of incarceration.

## CONCLUSION

In light of our discussion above, we conclude that the evidence was sufficient to support Gleason's convictions with regard to the charged offenses. Although we find that

the trial court did not abuse its discretion in sentencing Gleason, we find that the eleven-year aggregate sentence that was imposed is inappropriate when considering the nature of the offenses and Gleason's character.  Thus, we revise Gleason's aggregate sentence to a term of six years of incarceration in accordance with the instructions set forth above.

The judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court with instructions that it revise Gleason's sentence.

DARDEN, J., and BAILEY, J., concur.