## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 26 2017, 6:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Riccardo Hutchins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 26, 2017

Court of Appeals Case No.
49A04-1609-CR-2184

Appeal from the Marion Superior Court

The Honorable Marc T. Rothenberg, Judge

Trial Court Cause No.
49G02-1601-F2-2233

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Riccardo Hutchins (Hutchins), appeals his conviction for burglary while armed with a deadly weapon, a Level 2 felony, Ind. Code § 35-43-2-1(3)(A); and criminal confinement while armed with a deadly weapon, a Level 3 felony, I.C. § 35-42-3-3(a),(b)(2)(A).

We affirm.

## ISSUE

Hutchins raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt that Hutchins was armed with a deadly weapon when he committed the offenses of burglary and criminal confinement.

## FACTS AND PROCEDURAL HISTORY

In March of 2014, Mohammed Altaher (Altaher) arrived in the United States from Saudi Arabia to further his education. On January 11, 2016, he moved to Indianapolis, Marion County, Indiana, to study mechanical engineering and technology at Indiana University-Purdue University Indianapolis. Altaher and another Saudi Arabian student, Hasham Alshayab (Alshayab), rented an apartment together at Lockefield Gardens, close to the university campus.

On January 13, 2016, at approximately 4:30 p.m., Altaher and Alshayab were in their apartment when they heard a knock at the door. Altaher looked through the peephole but did not see anybody on the other side. Assuming a

package had been delivered, he opened the door, and "[a] tall, slender black male" appeared and pushed his way into the apartment. (Tr. Vol. II, p. 111). The intruder "pulled a gun on" Altaher and ordered him into the living room, where he directed Altaher and Alshayab to lie on the floor. (Tr. Vol. II, p. 30). Although Altaher and Alshayab refused to lie down, they sat in the living room while the suspect pocketed their cell phones and collected a laptop and an Xbox.

[6] As the intruder gathered the personal property of Altaher and Alshayab, "he point[ed] the gun very close to" Altaher. (Tr. Vol. II, p. 36). Apart from movies and videogames, Altaher had never before seen a gun in person, and he described the suspect's firearm as "[g]ray color, small. . . . Automatic." (Tr. Vol. II, p. 31). Because of its small size, Altaher began to suspect that the gun may not be real. Speaking in Arabic, Altaher relayed his doubts about the authenticity of the gun to Alshayab and suggested that they use force "to get him out of the apartment" and "to get back [their] items." (Tr. Vol. II, p. 56). Alshayab agreed, and together, they began "fighting and kicking" the burglar. (Tr. Vol. II, p. 36). Alshayab also grabbed a pressure cooker off the stove and hit the intruder with it.

[7] The burglar responded to the physical brawl in kind, and Altaher indicated that the gun was never visible during the fight. Eventually, the confrontation was removed to the hallway, and, the intruder, who had abandoned the laptop and Xbox inside the apartment, attempted to flee the building. However, Altaher and Alshayab were adamant that the burglar was not leaving with their cell

phones, and they continued to engage with the suspect. At one point, the burglar kicked Altaher in the nose, breaking his nose and causing Altaher to bleed significantly. The commotion quickly drew the attention of several neighbors, including Ryan Barnett (Barnett), who opened his door and observed "three men fighting with each other," none of whom he had ever seen before. (Tr. Vol. II, p. 68). "All three of them were claiming that they were being robbed by someone else." (Tr. Vol. II, p. 68). The two that Barnett later learned were his new neighbors (*i.e.*, Altaher and Alshayab) yelled to Barnett that the third man had a gun, and Barnett observed "a few times that [the intruder] gestured kind of behind his back, what I could have interpreted as reaching for a gun." (Tr. Vol. II, p. 72). Still unsure of what was going on but concerned about the safety of his neighbors, who appeared to be losing the fight, Barnett intervened to break up the fight and yelled at the suspect to "[j]ust get out of here." (Tr. Vol. II, p. 72).

[8] Alshayab pulled the jacket off the fleeing suspect and retrieved their cell phones. When the police arrived, they discovered documentation in the burglar's jacket in Hutchins' name. When shown a photo array, Altaher identified Hutchins as the intruder. Additionally, Barnett stated that he saw Hutchins' driver's license photograph and that he was the same individual involved in the hallway fight with Altaher and Alshayab.

[9] On June 16, 2016, the State filed an amended Information, charging Hutchins with Count I, burglary, a Level 2 felony, I.C. § 35-43-2-1(3)(A); Count II, armed robbery, a Level 3 felony, I.C. § 35-42-5-1(1); Count III, armed robbery,

a Level 3 felony, I.C. § 35-42-5-1(1); Count IV, criminal confinement, a Level 3 felony, I.C.§ 35-42-3-3(a),(b)(2)(A); and Count V, criminal confinement, a Level 3 felony, I.C. § 35-42-3-3(a),(b)(2)(A). On August 8-9, 2016, the trial court conducted a jury trial. At the close of the evidence, the jury returned a guilty verdict on Count I, burglary as a Level 2 felony; and Count IV, criminal confinement as a Level 3 felony. The jury returned a not guilty verdict for the remaining Counts. The trial court entered judgments of conviction and acquittal in accordance with the verdict. On August 31, 2016, the trial court held a sentencing hearing. As to Count I, the trial court sentenced Hutchins to fifteen years, with ten years executed in the Indiana Department of Correction and five years suspended, with three years of probation. The trial court stated that upon Hutchins' completion of the Purposeful Incarceration program, it would consider a sentence modification. For Count II, the trial court ordered a concurrent four-year sentence. The trial court further ordered Hutchins to pay restitution to Altaher for his medical bills.

[10] Hutchins now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[11] Hutchins claims that the State presented insufficient evidence to support his conviction for Level 2 felony burglary and Level 3 felony criminal confinement. When considering a claim of insufficient evidence, we adhere to a long-settled standard of review. Our court does not reweigh evidence or assess the credibility of witnesses, and we will consider only the evidence, and the

reasonable inferences drawn therefrom, that are most favorable to the verdict. *Gleason v. State*, 965 N.E.2d 702, 708 (Ind. Ct. App. 2012). We will affirm a conviction "if the evidence and those inferences constitute substantial evidence of probative value to support the verdict." *Id.* "Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense." *Id.*

## II. *Sufficiency of Evidence*

[12] Regarding Hutchins' conviction for Count I, Indiana Code section 35-43-2-1(3)(A) provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. However, the offense is . . . a Level 2 felony if it . . . is committed while armed with a deadly weapon." As to his conviction for Count IV, Indiana Code section 35-42-3-3(a),(b)(2)(A) stipulates that "[a] person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement[, a Level 6 felony]. . . . The offense of criminal confinement . . . is . . . a Level 3 felony if it . . . is committed while armed with a deadly weapon." Hutchins does not dispute the sufficiency of the evidence establishing that he committed the crimes of burglary and criminal confinement; rather, he argues only that the State failed to prove that he was armed with a deadly weapon—as charged, a "handgun and/or BB gun"—to warrant the higher-level felonies. (Appellant's Conf. App. Vol. II, p. 30). More specifically, Hutchins argues that

> [f]rom the evidence presented here, when the victim himself did not believe the gun Hutchins had was real, a reasonable jury could not have found that Hutchins possessed a deadly weapon, specifically either the handgun or the BB gun that the State elected to charge. Because that element of the crimes was not proven beyond a reasonable doubt, Hutchins'[] convictions should be reduced to lesser included felonies that are not enhanced based upon the possession of a deadly weapon.

(Appellant's Br. pp. 15-16).

[13] A "deadly weapon" includes, in part, "[a] loaded or unloaded firearm" or "[a] destructive device, weapon, device, taser . . . or electronic stun weapon . . . , equipment, chemical substance, or other material that in the manner it . . . is used; . . . could ordinarily be used; or . . . is intended to be used[] is readily capable of causing serious bodily injury." I.C. § 35-31.5-2-86(a)(1)-(2). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." I.C. § 35-31.5-2-292. Accordingly, by statute, "there are two categories of 'deadly weapons:' (1) firearms; and (2) weapons capable of causing serious bodily injury." *Merriweather v. State*, 778 N.E.2d 449, 457 (Ind. Ct. App. 2002). "Whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the circumstances of the case." *Davis v. State*, 835 N.E.2d 1102, 1112 (Ind. Ct. App. 2005), *trans. denied*. "The fact finder may look to whether the weapon had the actual ability to inflict serious

injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime." *Merriweather*, 778 N.E.2d at 457. Although the deadly weapon need not be revealed during the crime or even admitted at trial, there must "be evidence to support the finding that the defendant in fact was 'armed with a deadly weapon.'" *Gray v. State*, 903 N.E.2d 940, 943 (Ind. 2009).

[14] Here, the State charged that Hutchins committed the offenses with either a handgun or a BB gun. Whereas handguns clearly fit into the category of firearms, our courts have generally relegated BB guns to the category of other weapons that are capable of causing serious bodily injury. *Davis*, 835 N.E.2d at 1112. Our courts have not yet addressed a situation in which a witness testified that the defendant was armed with a gun but had also expressed doubts about whether the gun was even real.

[15] In *Gorman v. State*, 968 N.E.2d 845, 851 (Ind. Ct. App. 2012), *trans. denied*, our court clarified that it is not enough for a victim to "merely fear[] that the defendant was armed with a deadly weapon" where "no such weapon was shown or displayed and/or the defendant made no statements that he or she was armed." However, we stated that "a victim's testimony that he or she saw the defendant use what was believed or 'figured' to be a gun is, by itself, sufficient proof of the use of a deadly weapon." *Id.* In this case, when Hutchins forced his way into the apartment of Altaher and Alshayab, he visibly had a "gun . . . in his hand." (Tr. Vol. II, p. 30). Altaher conceded his complete lack of knowledge regarding firearms and described Hutchins' gun as "[g]ray color,

small. . . . Automatic." (Tr. Vol. II, p. 31). Based on the small size of the gun, Altaher suspected that it might be fake, although he "was not sure 100 percent." (Tr. Vol. II, p. 51).[1] Detective John Dietz (Detective Dietz) of the Indianapolis Metropolitan Police Department testified that, at first glance, a real gun and a BB gun may be indistinguishable. He further testified that guns come in different sizes and styles and are manufactured with different materials. He stated that it is possible that a real gun could have plastic components.

[16] Furthermore, regardless of whether the gun was a real handgun, the evidence establishes that Hutchins utilized it in a manner that was "threatening" to Altaher, and Altaher ultimately testified that he did not "know [if the gun was real or fake], but [he] was 100 percent scared." (Tr. Vol. II, pp. 31, 58). *See Whitfield v. State*, 699 N.E.2d 666, 671 (Ind. Ct. App. 1998) (concluding that a disabled pellet gun was a deadly weapon because it "was used in a threatening manner and placed the victims in fear"), *trans. denied*. In addition, Detective Dietz testified that even if Hutchins had used a BB gun instead of a real firearm, BB guns are capable of causing "substantial injury"—such as "actual puncture wounds to [the] skin. I've had people shot in the face, in the eye." (Tr. Vol. II, p. 156). Our court has also previously found that BB/pellet guns, toy guns, or

---

[1] Hutchins also directs our attention to the testimony of the detective who investigated the case, who acknowledged that the CAD report for this incident, which is "a documented version of what's going on that's real time," indicates that a 9-1-1 caller reported that a "plastic" gun had been utilized. (Tr. Vol. II, p. 173-74). We note that the CAD report was not admitted into evidence, and there is no indication in the record as to who called and reported information as to the gun's material. Nevertheless, this information was presented to the jury, which ultimately found that a deadly weapon had been utilized.

guns loaded with blanks can constitute deadly weapons based on their ability to be used as a bludgeoning instrument. *See, e.g.*, *Buchanan v. State*, 490 N.E.2d 351, 354-55 (Ind. Ct. App. 1986). Accordingly, we find that there is substantial evidence of probative value to support the jury's determination that Hutchins was armed with a deadly weapon when he committed the offenses of burglary and criminal confinement.

## CONCLUSION

Based on the foregoing, we conclude that the State presented evidence beyond a reasonable doubt to support Hutchins' conviction for burglary while armed with a deadly weapon, a Level 2 felony; and criminal confinement while armed with a deadly weapon, a Level 3 felony.

Affirmed.

Najam, J. and Bradford, J. concur