## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 28 2019, 8:59 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

P. Jeffrey Schlesinger
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Lavelle Lamar Borom,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 28, 2019

Court of Appeals Case No.
18A-CR-1309

Appeal from the Lake Superior Court

The Honorable Samuel L. Cappas, Judge

Trial Court Cause No.
45G04-1612-F4-47

**May, Judge.**

[1] Lavelle Lamar Borom appeals following his conviction of Class C felony stalking[1] and his admission of being a habitual offender.[2] Borom argues the evidence was insufficient to prove he committed stalking and the trial court abused its discretion in finding three of the ten aggravators it used to justify his sixteen-year sentence. We affirm Borom's conviction and the length of his sentence, but we remand for correction of the sentencing order.

## Facts and Procedural History

[2] M.M. lived with her mother Ruth Martinez. In October 2013, Martinez sought a protective order for M.M. and herself against Borom, who was M.M.'s off and on boyfriend. At the time the order was sought, M.M. and Borom were broken up. Martinez requested the order because Borom was going past their house, breaking windows, "texting [M.M.], and writing messages." (Tr. Vol. II at 36.) The trial court granted the request for a protective order, but Borom's activity continued. On December 11, 2013, police arrested Borom for violating the protective order.

[3] On February 25, 2014, Borom texted to M.M.: "You know you going [sic] to get whacked this week[.]" (*Id*. at 113.) The same day, Borom sent another text saying: ". . . Man, if I want you dead today, it can be done . . . ."(*Id*.) On

---

[1] Ind. Code § 35-45-10-5(a) & (b)(1) (2002) (for acts between December 11, 2013, and June 30, 2014).

[2] Ind. Code § 35-50-2-8 (2005).

March 19, 2014, someone broke the windshield of Martinez's car. On March 29, 2014, police responded to Martinez's house because of threatening text and voice messages M.M. received from Borom. On March 31, 2014, the police were called because Borom told M.M. he was going to break her car window and kill her. While M.M. was arguing on the phone with Borom, Martinez observed Borom walking in front of their house.

[4] On October 19, 2014, Martinez called police because a window of her house had been damaged and she believed Borom to be responsible. On November 13, 2014, police were called to Martinez's house twice: first because Borom threw a brick through the house's front window, and second because a rock was thrown through another house window. When responding to the second call, a police officer saw Borom in the area and approached him. Borom ran from police but was apprehended. On December 10, 2014, the police were called because M.M. received threatening text messages from Borom.

[5] On April 26, 2015, Borom came out of a building next to Martinez's home and pointed a gun at her. Borom left when the police were called. On June 10, 2015, police responded to a report of more threatening text and voice messages from Borom to M.M.. Borom told M.M. he had a gun and was going to get her. On June 15,2015, Martinez heard gunshots and found her van had bullet holes in it. On June 29, 2015, police responded to a call from Martinez's home regarding gunshots. Police found a bullet hole through one of the windows. M.M. told police Borom sent her multiple intimidating messages, including one advising her to not sleep in her room.

[6] On December 9, 2016, the State charged Borom for his actions towards M.M. with Class C felony stalking, two counts of Level 4 felony stalking,[3] and two counts of Level 5 felony stalking.[4] After the case was filed, a protective order was issued against Borom directing him to not have contact with M.M. or Martinez. Borom ignored this order and made over seven-hundred calls to M.M. from jail. The jail then blocked its phones from calling M.M.'s number. Despite the block, Borom tried calling M.M. approximately thirty more times.

[7] The State later filed an information alleging Borom was a habitual offender. After a three-day trial, a jury found Borom guilty of Class C felony stalking for acts that occurred between December 11, 2013, and June 30, 2014. The trial court held a sentencing hearing and then entered a sentencing order containing the following findings and conclusions:

### FINDINGS:

**Aggravating Circumstances:**

1. The defendant has a history of criminal activity beginning as a juvenile including twenty-nine (29) contacts with law enforcement including four (4) felony convictions and two (2) misdemeanor convictions.

2. The harm, loss, or injury suffered by the victim is significant. The State needed only to prove two (2)

---

[3] Ind. Code § 35-45-10-5(a), (b)(1), & (c)(1) (2014) (for acts between July 1, 2014, and December 4, 2016).

[4] Ind. Code § 35-45-10-5(a) & (b)(1) (2014) (for acts between July 1, 2014, and December 4, 2016).

instances of harassment to constitute the elements of the offense; however, the evidence at trial showed hundreds of previous instances of damage to victim's property including broken windows, gunshots fired, and pointing of a firearm.

3. The victim was particularly susceptible to being manipulated, as she has previous traumatic brain injury in her medical history;

4. The defendant's behavior toward the victim is an example of a predator preying on the weak;

5. The Court finds that even though the defendant did not inflict bodily injury on the victim, in the context of the stalking charge the Court considers the defendant to be the worst of the worst;

6. The Court finds the defendant's behavior, as demonstrated by the evidence presented at trial, reached the point of being obsessive and relentless in that the defendant terrorized the victim for approximately three (3) years;

7. The defendant has had benefit of plea agreements for past charges including charges being reduced and/or dismissed; and [sic]

8. The defendant has previously received the benefit of probation which he has violated;

9. The defendant has previously been sentenced to periods of incarceration which failed to act as a deterrent to future criminal behavior. Further, the defendant has not taken

advantage of the opportunity to live a crime-free life after sentences were served; and

10. The defendant is [in] need of correctional rehabilitative treatment that can only be provided by a penal facility, as evidenced by the factors enumerated above.

**Mitigating Circumstances:**

1. The defendant expresses remorse, which the Court acknowledges as a mitigating circumstance; however, based on his pattern of behavior as brought forth in trial where there were numerous, perhaps hundreds of instances of his pattern of stalking, the Court does not give this mitigating circumstance great weight.

2. The defendant advises the Court that he began having alcohol dependency issues in 2009; however, the Court notes the defendant's criminal history is replete with criminal activity prior to 2009 and the Court does not consider defendant's alcohol dependency a mitigating circumstance.

The Court finds that the aggravating circumstances substantially outweigh the mitigating circumstances.

**<u>SENTENCE:</u>**

The Court now sentences the defendant as follows:

The defendant is now sentenced on Count III, Stalking, a Class C Felony, to the maximum sentence of eight (8) years to be served in the Department of Correction. On the Habitual Offender Enhancement, the defendant is now sentenced to eight (8) years.

Seven (7) years of said sentence are to be served in the Department of Correction and one (1) year to be served in Lake County Community Corrections, with initial placement in Kimbrough Work Program. Although the Court feels the defendant is deserving of the twelve (12) year maximum sentence on the Habitual Offender Enhancement due to the aggravating circumstances, the defendant did admit to allegations of the Habitual Offender Enhancement. The Court gives the defendant due consideration for that admission. Said sentences are to be served consecutively.[5]

(Appealed Order at 1-3 (footnote added).)

# Discussion and Decision

### *Sufficiency of Evidence*

[8] Borom first alleges the evidence was insufficient to support his conviction.

Sufficiency-of-the-evidence claims face a steep standard of review: we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility. We affirm the judgment unless no reasonable factfinder could find the defendant guilty.

---

[5] The trial court sentenced Borom to eight years for being a habitual offender and ordered the sentence served consecutively with his sentence for Class C felony stalking. A habitual offender determination is not a separate crime and should not result in a separate sentence. *J.L.H. v. State*, 642 N.E.2d 1368, 1371 (Ind. 1994), as corrected (Oct. 12, 2018). Instead the finding allows the court to impose an enhanced sentence for the underlying felony. *See id.* The trial court should have sentenced Borom to a sixteen-year sentence for Class C felony stalking, rather than two consecutive eight-year sentences. *See Roark v. State*, 829 N.E.2d 1078, 1080 n.5 (Ind. Ct. App. 2005) (trial court improperly sentenced the habitual offender status as a separate crime), *trans. denied*. We remand for the court to correct the sentence. *See J.L.H.*, 642 N.E.2d at 1371 (remanding for correction).

*Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016) (internal citations omitted). "It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the verdict." *Steele v. State*, 42 N.E.3d 138, 144 (Ind. Ct. App. 2015).

[9] Indiana Code section 35-45-10-5(a) (2002) provides: "A person who stalks another person commits stalking[.]" Indiana Code section 35-45-10-1 (1993) defines stalk as, "knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." The State charged Borom with Class C felony stalking alleging:

> . . . Between December 11, 2013 and June 30, 2014 . . . Borom did stalk another person, to-wit: [M.M.], and did make an implicit or explicit threat with the intent to place [M.M.] in reasonable fear of serious bodily injury or death, contrary to [Indiana Code section] 35-45-10-5(a) (2002) and [Indiana Code section] 35-45-10-5(b)(1) (2002) . . . .

(App. Vol. 2 at 15.)

[10] Borom first argues the evidence is insufficient to prove he engaged in "repeated or continuing harassment during the time of conviction." (Br. of Appellant at 12.) Borom says the three contacts he made with M.M. between December 11, 2013, and June 30, 2014, were not enough to prove he continually or repeatedly harassed M.M.. However, repeated in this context means more than once. *See*

*Nicholson v. State*, 963 N.E.2d 1096, 1101 (Ind. 2012) (holding repeated meant more than once). Therefore, the three contacts made by Borom are sufficient to show he repeatedly harassed M.M..

[11] Second, Borom argues the evidence is insufficient to prove "M.M. actually felt terrorized, frightened, intimidated or threatened." (Br. of Appellant at 12.) Stalking becomes a Class C felony when a person "makes an explicit or an implicit threat with the intent to place the victim in reasonable fear of: sexual battery (as defined in Ind. Code § 35-42-4-8); serious bodily injury; or death . . . . " Ind. Code § 35-45-10-5(b)(1)(B) (2002). M.M. testified to feeling threatened by Borom. M.M. said the reason she would begin dating Borom again was "only [be]cause [she] was threatened." (Tr. Vol. II at 99.) M.M. testified she was "afraid" Borom was going to hurt her. (*Id*. at 139.) On February 25, 2014, Borom texted M.M. "U kno u gunna get wack[6] this week." (State Ex. 6 (errors in original).) That same day Borom texted M.M. saying ". . . man if I want u dead today it can b done. . . ." (*Id*. (errors in original).) Borom also told M.M. she would have a closed casket funeral. (*Id*.) Based on these facts, the State presented sufficient evidence to prove M.M. felt threatened and feared serious bodily injury or death.

---

[6] "Whack" is a slang term that means "murder" or "kill." *See* http://www.merriam-webster.com/dictionary/whack (last visited March 18, 2019).

## *Finding of Aggravators*

[12] "We initially observe that sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Gleason v. State*, 965 N.E.2d 702, 710 (Ind. Ct. App. 2012). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g* 875 N.E.2d 218 (Ind. 2007).

> The trial court can abuse its discretion by: (1) issuing an inadequate sentencing statement, (2) finding aggravating or mitigating factors that are not supported by the record, (3) omitting factors that are clearly supported by the record and advanced for consideration, or (4) finding factors that are improper as a matter of law.

*Gleason*, 965 N.E.2d at 710.

[13] Borom argues the trial court abused its discretion by considering aggravators it was not allowed to consider. Specifically, Borom argues three aggravators were erroneous:

> 2. The harm, loss, or injury suffered by the victim is significant. The State needed only to prove two (2) instances of harassment to constitute the elements of the offense; however, the evidence at trial showed hundreds of previous instances of damage to victim's property including broken windows, gunshots fired, and pointing of a firearm.

5. The Court finds that even though the defendant did not inflict bodily injury on the victim, in the context of the stalking charge the Court considers the defendant to be the worst of the worst;

6. The Court finds the defendant's behavior, as demonstrated by the evidence presented at trial, reached the point of being obsessive and relentless in that the defendant terrorized the victim for approximately three (3) years.

(Appealed Order at 1-2.) Borom argues these aggravators are improper because they are based on evidence supporting charges of which he was acquitted. Forty years ago, the Indiana Supreme Court held it is improper to consider crimes for which a person is acquitted as aggravators. *McNew v. State*, 391 N.E.2d 607, 612 (Ind. 1979).

[14] Borom is correct in asserting that aggravator number two is inappropriate because it considers evidence from crimes for which Borom was acquitted. For example, there simply were not "hundreds of previous instances of damage to victim's property" between December 2013 and July 2014. (Appealed Order at 1.) In addition, although the windshield of Martinez's car was broken during this timeframe, there was no evidence to demonstrate Borom was responsible for that damage.

[15] However, aggravators five and six can be affirmed without considering the evidence from the charges for which Borom was acquitted. For example, while

Borom was in jail he attempted over seven hundred phone calls to M.M.. The jail blocked M.M.'s number to prevent Borom from being able to call her, but he attempted to call M.M. an additional thirty times. Calling someone nearly eight-hundred times demonstrates Borom "reached the point of being obsessive and relentless." (*Id.* at 2.) Furthermore, Martinez requested the protective order in October 2013, and Borom made those calls to M.M. from jail after he was charged in December 2016, so that he had been harassing M.M. "for approximately three (3) years." (*Id.*) As such, there is proper evidence that supports aggravator six and, in light of that same evidence of long-term relentless obsessive behavior, we cannot say the trial court abused its discretion when it called Borom "the worst of the worst." (*Id.*)

[16] While the trial court entered one inappropriate aggravator, we cannot say that requires reversal. When a trial court considers an improper aggravator, we may nevertheless affirm the sentence if we can "say with confidence that the trial court would have imposed the same sentence." *Webb v. State*, 941 N.E.2d 1082, 1090 (Ind. Ct. App. 2011) (affirming despite trial court's failure to consider guilty plea a mitigator), *trans. denied*. Despite one aggravator being inappropriate, the court properly considered nine other aggravators. Those aggravators included Borom's extensive criminal history, the victim's susceptibility to being manipulated, Borom's predatory behavior, Borom being the worst of the worst, Borom's obsessive behavior, Borom's past benefit of plea agreements, Borom's past violation of probation, Borom's failure to respond to past incarceration, and Borom's need for correctional rehabilitative treatment.

In addition, the trial court rejected one of Borom's two mitigators and refused to give the other one significant weight. As such, we are confident the trial court would have reached the same sentence regardless whether it considered the improper aggravator. *See*, *e.g.*, *id*. at 1090 (affirming sentence despite abuse of discretion regarding one aggravator when other aggravators existed).

## Conclusion

[17] The evidence demonstrates Borom engaged in repeated harassment of M.M. and M.M. felt threatened by Borom's actions, and thus the State presented sufficient evidence Borom committed Class C felony stalking. Additionally, while the trial court abused its discretion when it found one improper aggravator, there were nine other aggravators to support Borom's sentence. Accordingly, we affirm Borom's conviction and sentence length, but we remand for correction of the sentencing order for the reasons set forth in footnote five.

[18] Affirmed and remanded.

Baker, J., and Robb, J., concur.