## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2017, 8:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brandon E. Murphy
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Doralee A. Burress, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 29, 2017 <br><br> Court of Appeals Case No. <br> 05A02-1606-CR-1398 <br><br> Appeal from the Blackford Circuit Court <br><br> The Honorable Dean A. Young, Judge <br><br> Trial Court Cause No. <br> 05C01-1505-F5-113 |

**Pyle, Judge.**

# Statement of the Case

Doralee A. Burress ("Burress") appeals the trial court's denial of her motion for a change of judge as well as the sentence the trial court imposed after she pled guilty to Level 6 felony neglect of a dependent.[1] She argues that: (1) the trial court's denial of her motion for change of judge was clearly erroneous; (2) the trial court abused its discretion in sentencing her because it identified improper aggravators; and (3) her sentence was inappropriate under Indiana Appellate Rule 7(B). Because we find no error or abuse of discretion as alleged, we affirm her conviction and sentence.

We affirm.

# Issues

1. Whether the trial court erred when it denied Burress's motion for change of judge.

2. Whether the trial court abused its discretion when sentencing Burress.

3. Whether Buress's sentence was inappropriate under Indiana Appellate Rule 7(B).

# Facts

Burress is the mother of B.W., who was born in August 2014. According to the factual basis for Burress's guilty plea, between B.W.'s birth in August 2014 and

---

[1] IND. CODE § 35-46-1-4(a)(1).

October 2014, B.W. suffered multiple skull fractures, rib fractures, a fracture to his tibia, a fracture to his ankle, a lacerated liver, and bruising on his face. It is not clear exactly when each injury occurred. However, the probable cause affidavit describes that the bones were in "different stages of healing" when the injuries were discovered. (App. 18). Burress claimed she did not know how B.W. had received those injuries, but she admitted that she had noticed them and failed to seek medical treatment.

[4] On May 4, 2015, the State charged Burress with Level 5 felony neglect of a dependent resulting in bodily injury.[2] On January 4, 2016, Burress agreed, pursuant to a written plea agreement, to plead guilty to the charge. In exchange for Burress's guilty plea, the State agreed that Burress's sentence length would be left to the discretion of the trial court and that the sentence would be served on home detention.

[5] Initially, the trial court set a change of plea hearing for Burress to plead guilty. However, before the hearing occurred, the trial court entered an order in which it stated that it had reviewed the pre-sentence investigation report ("PSI") and was rejecting the plea agreement. As a basis for its rejection, the trial court found:

> 8. That a condition of the Plea Agreement is that the Court would be restricted from ordering an executed sentence in the

---

[2] The State also charged B.W.'s father, Joshua Walker, with neglect of a dependent, but his case is not a part of this appeal.

Indiana Department of Correction, which if the allegations in the charging instrument and affidavits supporting the charging instruments are true, is the only appropriate place for a defendant committing such acts to be sentenced.

9. That the public's confidence in the judicial system and their concepts of justice upon which that system relies would be severely lessened should the Court accept the Plea Agreement as tendered in this case.

(App. 93). The PSI that the trial court had relied upon included Burress's version of events, which she had written as follows:

My son was hospitalized at Riley for injuries that we could not explain. I am his mother and felt that I had not provided him with the proper care and he got hurt because of it. I wish to move forward and be the best mother that I can for my two babies. I regret not being able to protect him and I am deeply sorry for any effects this has had on my family. I will do everything I can to prevent anything like this from happening again.[3]

(App. 63-64). The PSI also documented that Burress had made the following statement to the probation officer:

I have no idea how any of the injuries happened to [B.W.]. We took him to his doctor here in town. I read what the doctor had written. He said that [B.W.] had an abnormal head size. I then

---

[3] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and INDIANA CODE § 35-38-1-13, the PSI must be excluded from public access. However, in this case the information contained in the PSI "is essential to the resolution" of Burress's claim on appeal. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

called the doctor to see if we should be concerned. That is why I took him to Riley.

(App. 64).

[6] On March 22, 2016, Burress moved for, among other motions, a change of judge and for the trial court to reconsider its rejection of the plea agreement. In her motion for change of judge, she argued that the trial court was biased because it had relied on improper information and had rejected the plea agreement even though the agreement was reasonable. As for her allegations that the trial court judge was biased, Burress claimed that the trial court judge had "reference[d] information contained in a Pre-Sentence Investigation Report that was obtained in violation of established local practice, procedure[,] and custom in Blackford County, Indiana . . . ." (App. 104). She attached to her motion a memorandum sent from another judge of the Blackford Circuit Court to the Blackford County Criminal Defense Bar in which the judge explained that the policy of the court was to schedule one hearing for both a change of plea and sentencing when a PSI was required. The memorandum specified that, under this procedure, the trial court should receive the PSI prior to the combined hearing. In an affidavit Burress attached to her motion, the former Chief Probation Officer in Blackford County, Aaron Henderson, averred that one concern he had with this combined hearing process was asking defendants questions concerning the charged events or including defendants' answers within the PSIs when a defendant had not yet formally offered her plea of guilty in the courtroom. He explained that: "To address that concern, [he] did not

include a Defendant's version of events in [PSIs] when the combined change of plea and sentencing procedure was used." (App. 112). Burress did not further explain how the trial court judge's consideration of the PSI demonstrated the judge's bias.

[7] With respect to her allegation that her plea agreement was reasonable, Burress noted that the Probation Department had recommended in the PSI that the trial court accept the plea agreement. She also noted that she did not have a criminal history and that she had successfully completed Department of Child Services ("DCS") services.

[8] The trial court held a hearing on Burress's motion for change of judge and motion to reconsider the plea agreement on April 13, 2016 and denied both. In its order on the motion for change of judge, the trial court specified that it had rejected the guilty plea "for a variety of reasons," including:

> 2. . . .
>
> > A. The injuries suffered by the child in this case were heinous and ongoing.
> >
> > B. That for the first two months of the child's life the child suffered continual physical abuse from one or more persons.
> >
> > C. The statements of the parents as set out in the Affidavit of Probable Cause, as well as in the Presentence Investigation Report indicate a lack of awareness or understanding of the child's injuries.

D. That the Plea Agreement called for a fully suspended sentence, as well as a reduction in the level of offense to which the defendant would enter a plea of guilty in this case such that the Court could not in good conscious [sic] accept the Plea Agreement.

3. That the Presentence Investigation Report did not include any information that was not required by Indiana law, nor did it violate any "established local practice" concerning the change of plea and sentencing procedure in the Blackford Circuit Court.

4. That the plea was unreasonable as determined by the Court based upon all evidence before the Court including the detailed Affidavit of Probable Cause, this Court's knowledge of the facts and circumstances presented to the Court as part of a companion CHINS proceeding involving the same parties, and information contained within the Presentence Investigation Report.

5. That in support of the defendant's Verified Motion for Change of Judge are certain exhibits, including Exhibits A and B which were prior communications between the Court and the Blackford County Defense Bar regarding combined guilty plea and sentencing hearings. The Court did indicate the Court's preference of excluding probation officer recommendations regarding a possible sentence for reasons stated therein. Provided further, the Court did in no way direct any probation officer to exclude from the presentence investigation report the offender's version of the offense.

6. That attached Exhibit 4 to the Verified Motion for Change of Judge is an Affidavit signed by former Chief Probation Officer Aaron Henderson wherein Mr. Henderson stated that in presentence investigation reports he prepared he did not include a defendant's version of events. If true, Mr. Henderson's conduct may have been in derogation of the requirements of State statute, the presentence investigation report, and without the knowledge of the Blackford Circuit Court Judge. Mr. Henderson's Affidavit

specifically stated that his concern regarding including such information was discussed "either locally or with representatives of other counties using this procedure[.] . . ." The matter was never discussed with the Circuit Court Judge or directed to be implemented by the Circuit Court Judge as outlined in Mr. Henderson's Affidavit. Provided further, the conduct of a probation officer does not bind a court with respect to the Court's statutory and constitutional duty to bring criminal matters to a just conclusion.

7. That the defendant has presented no legal basis to allege against the presiding judge nor has the defendant raised any facts or circumstances that would cause a reasonable person, aware of all the facts, to conclude that the presiding judge may have, or appear to have, any bias against this defendant.

(App. 120-22).

[9] On May 23, 2016, Burress entered into a second plea agreement with the State in which she agreed to plead guilty to an amended charge of Level 6 felony neglect of a dependent. This second plea agreement did not include a cap on her sentence or provide that she would serve her sentence on home detention. The trial court held a change of plea hearing and accepted Burress's second plea agreement.

[10] Subsequently, on June 13, 2016, the trial court held a joint sentencing hearing for Burress and B.W.'s father, Joshua Walker (collectively, "the Parents"). At the hearing, Michelle Coons ("CM Coons"), a case manager with DCS, testified that B.W. had been found a child in need of services ("CHINS") and was taken from the Parents after his injuries had been discovered. However,

she said that the Parents had successfully completed the CHINS proceedings and regained custody of B.W. at DCS's recommendation. CM Coons also testified that she was comfortable with B.W.'s placement with Burress.

[11] Next, Buress's probation officer testified and explained that she had recommended home detention in Burress's first PSI due to the length of the sentence she had originally recommended—six years. However, she testified, she had "[thought] about the situation further" since her initial recommendation and had changed her recommendation for Burress's second PSI, which was prepared for the sentencing hearing, to one (1) year of incarceration. (Tr. 25). The fact that the second plea agreement called for a lower sentencing range "played into" her recommendation. (Tr. 25).

[12] At the conclusion of the hearing, the trial court sentenced Burress to two and one-half (2½) years executed and told her that it would consider a petition to modify her sentence after one (1) year of incarceration if she behaved well during incarceration and had residential and employment opportunities at that point. The court found that several mitigating factors supported this sentence, including Burress's lack of criminal history; the hardship that incarceration would cause her family; Burress's remorse; and the fact that the crime was unlikely to recur. However, the trial court also found certain aggravating factors that it concluded were especially significant. Specifically:

> [B.W.] was a totally defenseless, totally dependent child, who spent the first two months of his life and every day, every moment of the first two months of his life in great agony. He

was literally beaten up by somebody[,] and the two people that were responsible to [e]nsure that that would never occur to their child are deaf and dumb when it comes to the possible explanation as to why that happened. The injuries have been set out for the record many times before, but just for purposes of formulating the Court's thoughts and the sentencing order in this case, it's noteworthy that when he was first referred to Riley Hospital he had an unusually large head, [and] he wasn't acting right. Once at Riley, they discovered multiple skull fractures and fluid on his brain. Many of the fractures [were] in various stages of healing[,] which means that it happened more than once. Multiple rib fractures, again, in various stages of healing, which indicate that it happened more than once. Possible fracture to the tibia and left ankle. He had a laceration or a cut on his liver. There was bruising to the left side of his face. Virtually every single moment of that child's life[,] he was in great agony. The parents were equally responsible to keep that from happening and should it happen by others to seek medical treatment. Accordingly, they are both equally culpable. That child was put to more torture than if he w[ere] an Islamic Jihadist at Guantanamo, being tortured for information or for his crimes. He was abused every single day for two months. Every single day. Either physically beaten up or denied the medical care that his beatings required. And the parents are deer in headlights when it comes to what happened to that child. Anything other than the maximum sentence would seriously depreciate what happened to this child.

(Tr. 42-44). Burress now appeals.

# Decision

[13] On appeal, Burress argues that: (1) the trial court erred when it denied her motion for change of judge; (2) the trial court abused its discretion when it sentenced her; and (3) her sentence was inappropriate under Indiana Appellate

Rule 7(B) in light of the nature of her offense and her character. We will address each of these issues in turn.

## 1. Motion for Change of Judge

First, Burress argues that the trial court erred because its findings in its order denying her motion for change of judge and its rejection of her first plea agreement with the State indicated that the trial court judge was biased against her.

Indiana Criminal Procedure Rule 12(B) provides that:

> In felony and misdemeanor cases, the [S]tate or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the [S]tate or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

"'Adjudicating a request for change of judge based on Rule 12(B) requires an objective, not subjective, legal determination by the judge, who is to examine the affidavit, treat the facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice.'" *Lehman v. State*, 55 N.E.3d 863, 867 (Ind. Ct. App. 2016) (quoting *Voss v. State*, 856 N.E.2d 1211, 1216 (Ind. 2006)), *trans. denied.* The appropriate standard of review of a trial judge's decision to grant or deny a motion for change of judge

under Indiana Criminal Rule 12 is whether the judge's decision was clearly erroneous. *Id.* at 866. The law starts with the presumption that a judge is unbiased and unprejudiced. *Zavodnik v. Harper*, 17 N.E.3d 259, 269 (Ind. 2014). Reversal will require a showing that leaves us with a definite and firm conviction that a mistake has been made. *Lehman*, 55 N.E.3d at 866.

[16] In support of her argument that the trial court judge was biased, Burress first asserts that the trial court judge "considered information that [was] not [] permitted under local practice in pre-sentence investigation reports[.]" (Burress's Br. 15). Specifically, she claims that the trial court appeared to reject the plea agreement because Burress was unable to explain how any of the injuries to B.W. had occurred. She contends that the trial court's reference to her inability to explain how the injuries happened indicated that he was punishing her for her lack of explanation rather than for her failure to seek treatment for B.W., which was the element of her offense.

[17] Notably, Burress did not explicitly raise this argument in her motion for change of judge or at the hearing on the motion. In Burress's motion for change of judge, she argued that the trial court inappropriately considered her version of events that was documented in the pre-sentence investigation report. She did not claim that the trial court considered factors that were not elements of her crime as a result of considering that information in the PSI. In fact, Burress did not clarify in her motion for change of judge how the trial court's consideration of her version of events in the PSI demonstrated the trial court's bias. Because she, therefore, is raising a new argument on appeal, we conclude that she has

waived that argument for appellate review. *See Hape v. State*, 903 N.E.2d 977, 997 (Ind. Ct. App. 2009) (stating that a party may not raise an argument for the first time on appeal), *trans. denied*.

[18] Next, Burress argues that the trial court's rejection of a "reasonable" plea agreement and its statements that "the Indiana Department of Corrections . . . is the only appropriate place for a defendant" committing the charged acts and that the Parents were "pathetic examples of parents" indicated that it was biased against her. (Burress's Br. 15-16). We disagree because it is clear that the trial court's rejection of the plea agreement and its statements regarding the Parents were based on its evaluation of the evidence, not its bias against the Parents.

[19] Our supreme court has previously held that:

> A judge's exposure to evidence through judicial sources is generally insufficient to establish bias. The fact that a litigant has appeared before a judge in prior cases does not establish bias or prejudice. Prejudice is not inferred from adverse judicial rulings.

*Zavodnik*, 17 N.E.3d at 269.

[20] Burress isolates the trial court's statement that the Department of Correction is the only place for her from its context. In full, the trial court found:

> [A] condition of the Plea Agreement is that the Court would be restricted from ordering an executed sentence in the Indiana Department of Correction, which *if the allegations in the charging instrument and affidavits supporting the charging instruments are true*,

> is the only appropriate place for a defendant committing such
> acts to be sentenced.

(App. 93) (emphasis added). The full text of this finding emphasizes that the trial court's statement that Burress belonged in the DOC was based on the allegations in the charging information and affidavits supporting the charging instruments. In the statement, the trial court recognizes that its conclusion is qualified by the conditional assumption that "the allegations . . . are true." (App. 93). In other words, the trial court had not already decided that Burress belonged in DOC; it merely did not want to foreclose that option.[4] Accordingly, this statement was not evidence of the trial court's bias. *See Zavodnik*, 17 N.E.3d at 269 ("A judge's exposure to evidence through judicial sources is generally insufficient to establish bias.").

[21] As for Burress's argument that the trial court's rejection of a reasonable plea agreement indicated its bias, we must note that the trial court has "wide discretion" to reject a plea agreement. *Nybo v. State* , 799 N.E.2d 1146, 1152 (Ind. Ct. App. 2003). As stated above, prejudice is not inferred from adverse judicial rulings. *See id.* Burress has not provided any other facts showing that the trial court thought the plea agreement was reasonable and rejected it because of bias. Instead, it is clear from the record that the trial court rejected

---

[4] The terms of a plea agreement between the State and the defendant are contractual in nature. *State v. Smith*, 71 N.E.3d 368, 370 (Ind. 2017). When a trial court accepts a plea agreement, it is bound by its terms. *Id.* Therefore, if the trial court had accepted the plea agreement that provided that Burress would serve her sentence on home detention, it would have foreclosed its ability to sentence her to executed time in the Department of Correction.

the plea agreement because it did not think that the plea agreement was reasonable since it restricted the court's sentencing discretion to home detention.[5] The trial court had the discretion to determine that incarceration was more appropriate than home detention. *See Million v. State*, 646 N.E.2d 998, 1001 (Ind. Ct. App. 1995) ("[P]lacement in a community corrections program is an alternative to commitment to the Department of Correction and made at the sole discretion of the trial court. . . . Therefore, a defendant is not entitled to serve his sentence in a community corrections program but, as with probation, placement in the program is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'"). Therefore, the trial court's exercise of this discretion, absent other evidence, was not evidence of bias.

[22] For the foregoing reasons, we conclude that Burress did not present evidence that supports a rational inference of bias or prejudice. Thus, the trial court did not err when it denied Burress's motion for change of judge.

## 2. Sentencing

[23] Next, Burress argues that the trial court abused its discretion when it sentenced her because it identified improper aggravating factors. Specifically, she

---

[5] In support of her argument that the plea agreement was reasonable, Burress notes that the Probation Department recommended that the trial court accept the plea agreement. However, as stated above, Burress's probation officer testified that even though she had originally recommended that the trial court accept the plea agreement, when she "[thought] about the situation further[,]" she recommended one (1) year of incarceration. (Tr. 25). Burress also overlooks that her probation officer originally recommended home detention for six years—a significantly longer sentence than the sentence the trial court imposed after its acceptance of her second plea agreement.

challenges the trial court's comments that: (1) "the harm was caused by the defendant to a totally defenseless, newborn child[;]" (2) "the child was totally dependent upon the defendant[;]" (3) the abuse B.W. suffered was "daily" and like "torture[;]" and (4) "a lesser sentence would seriously depreciate the seriousness of the offense." (App. 177, 178).

[24] Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* The trial court can abuse its discretion by: (1) issuing an inadequate sentencing statement; (2) finding aggravating or mitigating factors that are not supported by the record; (3) omitting factors that are clearly supported by the record and advanced for consideration; or (4) by finding factors that are improper as a matter of law. *Gleason v. State*, 965 N.E.2d 702, 710 (Ind. Ct. App. 2012).

[25] First, Burress claims that the trial court abused its discretion when it found as aggravating factors that the harm was "caused by the defendant to a totally defenseless newborn child" and that "the child was totally dependent upon the defendant." (App. 177). She claims that these factors were improper as a matter of law because it is an element of the offense of neglect of a dependent that the alleged victim is dependent upon the defendant.

[26]    Burress is correct that it is improper as a matter of law to find that a material element of a crime is an aggravating circumstance. *Gleason*, 965 N.E.2d at 711. However, the nature and circumstances of an offense can be aggravators. *Id.* It is clear, here, that the trial court found B.W.'s particularized circumstances aggravating. Our Indiana Code defines "dependent" as "(1) an unemancipated person who is under eighteen (18) years of age; or (2) a person of any age who has a mental or physical disability." I.C. § 35-46-1-1. Contrary to Burress's argument, there is a significant difference in circumstances between a dependent who is eighteen years old and a two-month old infant. In both of the trial court's statements, it was emphasizing the particularized circumstances of a two-month old infant. Unlike older individuals who can walk and talk, but still qualify legally as dependents, B.W. was entirely physically dependent upon Burress to seek treatment for his injuries. He could not talk or explain his injuries to others. He was, as the trial court emphasized, "totally defenseless." (App. 177). Accordingly, we conclude that this particularized circumstance was not an element of the offense, and the trial court did not abuse its discretion in identifying it as an aggravating factor.

[27]    Next, Burress challenges the trial court's conclusion that the abuse B.W. suffered was "daily" and equivalent to "torture." (App. 178). She argues that these statements were not supported by the record and reflected the trial court's attempts to hold her culpable for inflicting B.W.'s injuries herself, rather than for failing to seek treatment as she was charged. Again, we conclude that the trial court's statements were based on the nature and circumstances of the

offense. The trial court was emphasizing that B.W.'s injuries were ongoing and severe, rather than a one-time occurrence. This conclusion was supported by the record as there was evidence that B.W.'s bones were in "different stages of healing." (App. 18). As for the trial court's analogy to torture, the trial court was commenting on the severity of B.W.'s injuries—and the impact that Burress's failure to seek treatment therefore had on B.W.—not accusing Burress of inflicting the injuries herself.

[28] Finally, Burress argues that the trial court's statement that "a lesser sentence than the one the Court imposes would seriously depreciate the seriousness of the offense" was an improper aggravator. (App. 177). However, Burress does not quote the trial court's entire statement. In full, the trial court found:

> that a lesser sentence than the one the Court imposes would seriously depreciate the seriousness of the offense and that but for the timely intervention of law enforcement and Child Protective Services the child would have suffered injury that may likely have resulted in the death of the child while in the care, custody[,] and control of both parents.

(App. 177-78). In its full context, it is clear that the trial court was again referring to the nature and circumstances of the offense—the severity of B.W.'s injuries. As the nature and circumstances of an offense are not improper aggravators, we conclude that the trial court did not abuse its discretion. *Gleason*, 965 N.E.2d at 711.

### 3. Indiana Appellate Rule 7(B)

[29]  Next, Burress argues that her sentence was inappropriate under Indiana Appellate Rule 7(B) in light of the nature of her offense and her character. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

[30]  When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. The sentencing range for Level 6 felony neglect of a dependent is between six (6) months and two and one-half (2½) years, with an advisory sentence of one (1) year. I.C. § 35-50-2-7. Accordingly, Burress received the maximum sentence for a Level 6 felony.

[31]  Burress argues that this sentence was inappropriate because the maximum sentence should be reserved for the worst offenders, and she believes she is not the "very worst offender." (Burress's Br. 20). In support of this argument, she notes that she does not have a criminal history, has a solid work history, has

addressed her depression issues through therapy, showed remorse, and complied with court orders in her CHINS proceedings.

[32] While these factors are positive evidence of Burress's character, we conclude that her sentence was not inappropriate in light of the nature of her offense. As the trial court found, B.W. suffered severe and ongoing injuries at an extremely young and vulnerable age. Those injuries included multiple skull fractures, rib fractures, a fracture to his tibia, a fracture to his ankle, a lacerated liver, and bruising on his face. Burress did not do anything to help B.W. and failed to seek treatment for those serious injuries even though she admits that she noticed them. Thus, the nature of her offense was egregious—she failed to seek treatment for severe injuries to a helpless infant even though she was aware of the injuries. This failure to seek treatment is also a reflection of her poor character. In light of this evidence, we do not find that her sentence was inappropriate.

[33] Affirmed.

May, J., and Brown, J., concur.